# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 1393

## BRADFORD LAND COMPANY, L.LC.

## VERSUS

## MONTAGNET PROPERTIES #2, L.L.C.

Judgment Rendered: **NOV 1 7 2022**

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2011-15340

Honorable Reginald T. Badeaux, III, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Allison C. Bondurant<br>Brittany J. Walker<br>Madisonville, Louisiana | Counsel for Plaintiff/Appellee<br>Bradford Land Company, L.L.C. |
| Renée S. Melchiode<br>Benjamin M. Pri-Tal<br>New Orleans, Louisiana | Counsel for Defendant/Appellant<br>Montagnet Properties #2, L.L.C. |

\* \* \* \* \* \*

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

Theriot, J concurs with reasons

**McCLENDON, J.**

In this case involving a boundary dispute, the defendant appeals the judgment of the trial court in favor of the plaintiff. The plaintiff answered the appeal. For the reasons that follow, we amend the judgment in part, affirm as amended, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On August 29, 1977, Dayle L. Bradford acquired Lot 290 in Flower Estates Subdivision in Covington, Louisiana. On December 31, 2003, James L. Bradford, Jr., M.D., and Dayle L. Bradford transferred their interest in Lot 290 to Bradford Land Company, LLC (Bradford Land) by deed entitled Transfer of Property as Capital Contribution.[1] Bradford Land remains the record title holder of Lot 290. On May 22, 1998, Oliver S. Montagnet, Jr. and Monica Cummings Montagnet acquired Lot 289 in Flower Estates Subdivision by cash sale. On August 26, 1998, the Montagnets sold Lot 289 to Montagnet Properties #2, LLC (MP#2).[2] MP#2 remains the record title holder of Lot 289. Lot 289 and Lot 290 are adjacent to each other and share a common boundary line. Both lots front on Louisiana Highway 21.[3]

In early 1999, MP#2 completed construction of a commercial building, parking lot, and other improvements on Lot 289, and on January 27, 1999, received a final inspection certificate from the City of Covington. MP#2 requested a survey of Lot 289, and Billy C. Daniels prepared a survey, dated February 10, 1999, of "1.00 acre of land being Lot No. 289 Flowers Estates Subdivision Covington St. Tammany Parish Louisiana," showing the building within the boundaries of Lot 289. Thereafter, on April 8, 1999, the City notified MP#2 that it had re-inspected the property and found items not in compliance with the Covington Code of Ordinances, including a five-foot setback

---

[1] Lot 290 was described as containing "100 feet on La. State Highway No. 21, by a depth of 400 feet along its side line common to Lot 289, by a depth of 400 feet along its side line common to Lot 291, and by a distance in the rear of 100 feet." In the transfer to Bradford Land, Dr. Bradford was identified as the duly authorized manager for Bradford Land.

[2] In the sale, Lot 289 was described as "100 feet front on Louisiana Hwy. No. 21, having a width in the rear of 100 feet, by a depth of 400 feet on each side line."

[3] The transfers to Bradford Land and MP#2 both reference that the respective lots are described in accordance with the survey and plan of E.J. Champagne, Surveyor, dated January 22, 1956.

2

requirement. Subsequently, the City and MP#2 entered into a consent judgment, which was signed by the trial court on December 19, 2000.

In 2006, in connection with a loan, MP#2 requested another survey of Lot 289 and hired Joseph M. Marques. The Marques survey, dated December 18, 2006, indicated that the improvements on Lot 289 were within the boundary lines for Lot 289.

Beginning in 2006, the Louisiana Department of Transportation and Development (DOTD) began a government expropriation of certain property for the widening of a section of Highway 21. In connection therewith, Louisiana Property Acquisition Company (LaPAC) managed the acquisition process for the forty-two parcels that were procured for the project, including portions of Lots 289 and 290 fronting on Highway 21.[4] During the course of the project, LaPAC hired John E. Bonneau & Associates (Bonneau) to survey the lots. The Bonneau survey, dated May 14, 2007, showed that the State acquired 6.97 feet from the boundary between Lot 289 and Lot 290.

Sometime in 2007, Bonneau notified Bradford Land that MP#2's improvements on Lot 289 might be encroaching on Lot 290. Bradford Land did not take any action regarding the disputed building location or setbacks until it sent a letter, dated August 28, 2009, through its attorney, to MP#2, alleging that the improvements on Lot 289 encroached onto Lot 290 and demanding equitable rent for the property encroached upon. The letter also attached a survey performed by Mr. Bonneau, dated June 17, 2009, showing the alleged encroachments.

On September 16, 2011, Bradford Land filed suit against MP#2, asserting that MP#2 constructed parking structures, concrete pads, sewer and drain cleanouts, as well as piping, across the Lot 289 boundary line and onto Lot 290 illegally and without the permission of Bradford Land. Bradford Land sought a declaration that the improvements encroached onto Lot 290, the removal of the encroachments at MP#2's cost, and reasonable rent for the time of the encroachment. Bradford Land also asked for damages for the encroachments and for the violation of the setback requirements.

---

[4] We note that Dr. Bradford's son, James L. Bradford, III, was involved in the 2007-2008 project as project manager for LaPAC.

In response, MP#2 filed a peremptory exception raising the objections of prescription, no cause of action, and peremption on January 11, 2012. Bradford Land opposed the exceptions. Following a hearing, the exceptions were denied, and the trial court signed a judgment denying same on April 26, 2013.

Subsequently, the trial court held a two-day bench trial on July 22 and 23, 2020. The parties stipulated that MP#2 is the record title owner of Lot 289 and that Bradford Land is the record title owner of Lot 290. Both parties submitted separate surveys and expert surveyor testimony. Bradford Land offered the surveys of John E. Bonneau and John Brandon McCain, along with their expert testimony, which showed that the 1999 improvements on Lot 289 extend more than three feet past the boundary between the properties.[5] Bradford Land also offered the 2012 survey of Michael P. Maillet, performed for DOTD in connection with a second improvement project along Highway 21.

MP#2 relied on the Daniels and Marques surveys, and offered the expert testimony of Mr. Marques, for its position that none of the improvements extended over the boundary between the two properties. MP#2 argued that it was the title owner of the disputed area, but even if it was not, it possessed the land in good faith and with just title for over ten years and was therefore the owner by acquisitive prescription.

The trial court took the matter under advisement, post-trial briefs were filed, and on January 8, 2021, the trial court issued its judgment and written reasons, fixing the boundary as depicted in the surveys of Mr. Bonneau and Mr. McCain. In its written reasons, the trial court determined that the Bonneau and McCain surveys provided the most reliable and accurate evidence of the boundary's location. The court found that the opinions of Mr. Bonneau and Mr. McCain showed definitive proof of the boundary at issue since they relied on the record title documents of ownership and the subdivision plats, after finding that the boundary could not be located based on the subdivision plats alone. The trial court also determined that Mr. Bonneau and Mr. McCain had the most reliable data because they surveyed the entirety of Highway 21 corridor from

---

[5] The Bonneau survey, dated June 17, 2009, and revised October 25, 2012, showed the furthest encroachment at 3.5 feet. The McCain survey, dated October 27, 2012, and prepared by John S. Teegarden, surveyor, showed the farthest encroachment at 4.6 feet.

4

Interstate 12 north to the Tchefuncte River Bridge, and they also properly used the hierarchy of calls and the data acquired to determine the boundary location. The trial court determined that the Daniels survey only located the building on Lot 289, with a vague reference to concrete parking, and did not identify the sewer cleanouts, concrete pads, concrete retaining wall, fencing, and bounds of the parking concrete.

After fixing the boundary line, the trial court concluded that the building and improvements on Lot 289 encroached onto Lot 290.[6] The court then found LSA-C.C. art. 670 applicable and ordered the establishment of a predial servitude. Article 670 provides:

> When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.

With respect to damages, the trial court found that the only expert opinion was that given by Bradford Land's expert, Ashton Ray, a licensed appraiser, who appraised the fair market value of the portion of Lot 290 used by MP#2, and found it to be worth $14.50 per square foot. Mr. Ray also opined that the servitude should have a width of six feet and be a straight line, as opposed to a jagged or saw-toothed line. This resulted in a total appraisal price of $33,500.00.[7] The trial court agreed and awarded Bradford Land $33,500.00 for the market value of the predial servitude. However, the trial court declined to award fair market rent for the property encroached upon by MP#2 in the amount of $53,000.00, as Bradford Land requested. The court found that amount to be speculative and pointed out that Bradford Land was not using the land in question for any purpose and that Lot 290 remains undeveloped.

---

[6] We note that Mr. McCain testified that the entire building itself was within the bounds of Lot 289. In its written reasons, the trial court stated that the building was not in dispute between the parties, but that what was disputed was the location of the sewer cleanouts, concrete pads, the concrete retaining wall, fencing, and bounds of the parking lot. The trial court then referred to the building and improvements on Lot 289 that encroached on Lot 290.

[7] The trial court acknowledged that the farthest encroachment on Lot 290 was 4.6 feet from the property boundary line, but agreed with Mr. Ray that a buffer between MP#2's constructions and potential future developments on Lot 290 was appropriate.

Thus, the January 8, 2021 judgment judicially fixed the boundary as depicted in the Bonneau and McCain surveys as the conclusive location of the boundary between the lots; granted a predial servitude over the area of the encroached land with a width of six feet from the boundary line, running "from the entire boundary of Lot 289 and onto Lot 290"; awarded the fair market value of the predial servitude in the amount of $33,500.00 to Bradford Land from MP#2; and cast all costs, including expert witness fees, against MP#2.

MP#2 appealed the judgment and assigned the following as error:

1. The trial court committed legal error when it failed to determine that MP#2 had acquired the alleged strip of land via acquisitive prescription after MP#2 established possession for more than ten years in good faith and just title based on recorded surveys.

2. The trial court committed legal error and utilized the incorrect burden of proof when determining who had better title to the land in dispute.

3. The trial court committed legal error when it adopted the findings of two different surveys to determine the boundary line despite the inherent defects in the surveys and despite their inconsistencies.

4. Alternatively, the trial court manifestly erred when it ruled that the Bonneau and McCain surveys determined the boundary when the surveyors themselves removed the original markings and replaced them with others while in Bradford Land's employment.

5. The trial court legally erred because Bradford Land's claim for damages prescribed or was otherwise preempted as suit was filed more than twelve years after completion of the improvements and more than one year after Bradford Land discovered the alleged encroachment.

6. Alternatively, the trial court awarded legally incorrect damages as the City of Covington preempted this issue when it ruled via Consent Judgment that MP#2 did not violate any setbacks and no law provided damages to Bradford Land for a buffer zone beyond the actual encroachment.

6

Bradford Land answered the appeal, seeking modification of the January 8, 2021 judgment, and assigned as error, the following:

1. The trial court erred in failing to grant Bradford Land judicial interest from the date of judicial demand, although the trial court's Written Reasons for Judgment correctly provided for judicial interest from the date of demand.

2. The trial court erred in failing to grant Bradford Land fair market rent for the portion of Lot 290 encroached upon by MP#2 from the construction of the encroachment through the date of the January 8, 2021 judgment.

3. The trial court erred in failing to decree that the predial servitude granted to MP#2 is limited and does not allow MP#2 to construct any additional encroachments onto Lot 290 beyond what existed at the time of the January 8, 2021 judgment.

4. The trial court erred in failing to decree that the predial servitude shall extinguish in accordance with law.

**STANDARD OF REVIEW**

It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. **Id.** The location of a boundary line is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. **Marcello v. Jo-Blanche Corporation**, 20-1113 (La.App. 1 Cir. 6/4/21), 330 So.3d 632, 639, writ denied, 21-1666 (La. 1/19/22), 331 So.3d 330.

A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 735.

7

## DISCUSSION

### The Boundary Location

MP#2 first argues that the trial court erred in determining a boundary line, since it has clear title to Lot 289 and owns the land, building, and component parts, by ten-year acquisitive prescription, based on its surveys and just title. Louisiana Civil Code article 3475 provides that "[t]he requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription." The only requirement at issue before us is just title.

"Just title" is defined in LSA-C.C. art. 3483 as "a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated." Thus, to have just title over particular property for purposes of ten-year acquisitive prescription, one must have a recorded act translative of title that contains a description of the property at issue.

The August 26, 1998 sale of Lot 289 to MP#2 referenced the "survey and plan of E.J. Champagne, Surveyor, dated January 22nd, 1956" being the same property acquired by the Montagnets in the "act of sale dated May 22, 1998." However, the Champagne survey did not describe the boundary between Lot 289 and Lot 290 in sufficient detail to show whether the improvements are inside the boundaries of Lot 289.[8]

The trial court determined that MP#2 did not have an act translative of title to the property upon which the alleged encroachments sit, and therefore, MP#2 failed to establish the requirement of just title for the purposes of acquisitive prescription. On appeal, MP#2 asserts that the consent judgment it obtained in the litigation with the City of Covington regarding MP#2's "setback and boundaries" and the survey by Mr. Daniels, dated May 21, 1998, filed in the public records, provides just title to the property at issue.

---

[8] Mr. Bonneau and Mr. McCain testified that the Champagne survey does not detail the original monuments and is missing curve data, courses, and angles necessary to determine the precise location of the boundary between Lot 289 and Lot 290.

8

However, a judgment does not constitute a just title as it is declarative rather than translative of rights. See LSA-C.C. art. 3483, Revision Comments (b). Further, the consent judgment made no finding or judgment regarding the boundary to Lot 289 nor was it translative of any rights. Additionally, the recordation of the Daniels survey did not transfer any rights to MP#2 and did not provide a just title. Accordingly, without just title, MP#2 failed to establish that it was the owner of the encroached property based on ten-year acquisitive prescription, and this assignment of error lacks merit.

MP#2 next claims that the trial court erred in using the wrong burden of proof in establishing the boundary. Specifically, MP#2 argues that the trial court failed to apply the elements of proof set forth in LSA-C.C.P. art. 3654 governing proof of ownership.[9] MP#2 avers that Bradford Land must establish "title good against the world" because MP#2 is the "presumed owner" of the property containing the encroachments because it is in possession thereof. MP#2 contends that Bradford Land failed to show better title and that the boundary should be placed based on MP#2's possession of the building and its components.

An action to fix the boundary is an ordinary proceeding. LSA-C.C.P. art. 3691. The boundary may be fixed upon the demand of an owner or of one who possesses as owner. LSA-C.C. art. 786. After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. LSA-C.C.P. art. 3693; **Presswood v.**

---

[9] Louisiana Code of Civil Procedure article 3654 provides:

> When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:
> (1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
> (2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.

9

**Spillman,** 04-0145 (La.App. 1 Cir. 2/11/05), 906 So.2d 509, 511, writ denied, 05-0672 (La. 5/6/05), 901 So.2d 1098.[10]

In the matter before us, the parties stipulated that MP#2 is the record title owner of Lot 289 and that Bradford Land is the record title owner of Lot 290. The title documents for the parties also establish that both Bradford Land and MP#2 acquired their properties in accordance with the original subdivision plats for Flower Estates. However, the title transfers for Lot 289 and Lot 290 contain property descriptions that include only a lot number and the length and width of the properties. Therefore, the issue before the trial court was the placement of the boundary between Lot 289 and Lot 290, not the ownership of the properties. The trial court correctly found that LSA-C.C.P. arts. 3691 through 3693, which provide the rules and law governing boundary actions, rather than LSA-C.C.P. art. 3654, were applicable to the present matter, and we find no legal error by the trial court.

MP#2's next two assignments of error pertain to the fixing of the boundary line. MP#2 contends that the trial court erred when it adopted the findings of two different surveys to determine the boundary line, despite their defects and inconsistencies. Alternatively, MP#2 argues that the trial court erred in using the Bonneau and McCain surveys to determine the boundary line when the surveyors themselves removed original markings and replaced them while in Bradford Land's employment.

The Louisiana Supreme Court has established that in cases where boundary questions exist, the legal guides for determining the location of a land line in property descriptions, in order of their importance, are: natural monuments, artificial monuments, distances, courses, and quantity, with the controlling consideration being intention of the parties. **Skillman v. Harvey,** 03-2724 (La.App. 1 Cir. 12/30/04), 898 So.2d 431, 434, writ denied, 05-0272 (La. 4/1/05), 897 So.2d 610 (citing **City of New Orleans v. Joseph Rathborne Land Co.,** 209 La. 93, 109-10, 24 So.2d 275, 281 (La. 1945); **Meyer v. Comegys,** 147 La. 851, 857, 86 So. 307, 309 (La. 1920)). A survey

---

[10] Louisiana Civil Code article 792 provides that in a boundary action, the court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession. Article 793 also provides, in part, that "[w]hen both parties rely on titles only, the boundary shall be fixed according to titles."

10

predicated on sound surveying principles should be accepted unless the record shows it is incorrect. **Skillman**, 898 So.2d at 435.

MP#2 asserts that the Daniels and Marques surveys verify that it is the owner of the disputed strip of land. The parties agreed that the 1956 Champagne survey did not refer to natural monuments relative to Lot 289 or Lot 290. MP#2 argues, however, that it did contain artificial monuments, being Highway 21 and Marigold Drive. Therefore, according to MP#2, Mr. Daniels based his survey on the location of Marigold Drive, and the survey should be accepted because it is the most ancient and follows the original ground survey of Mr. Champagne. MP#2 also contends that the Marques survey determined the boundaries based on the original intent of the Champagne survey and utilized original markers that were not considered by Bradford Land's surveyors.

The record shows that, in connection with their work in 2007 for the State regarding the widening of Highway 21, Mr. Bonneau and Mr. McCain surveyed all of the highway from Interstate 12 north to the Tchefuncte River Bridge. They located monuments along the front and rear property boundaries for all of the lots in the area, including residences, shopping malls, office buildings, gas stations, and empty lots. Mr. Bonneau has been a surveyor since 1980 and has surveyed areas of Flower Estates since 1976. Mr. McCain testified that he has also surveyed a number of areas in the subdivision. Mr. McCain stated that he has located monuments similar to the ½-inch iron pipes found on Lot 289 and Lot 290 and believes that the ½-inch iron pipes he and Mr. Bonneau used as a basis for their conclusions are the original monuments set by the original surveyors.[11]

The record also shows that Mr. Bonneau and Mr. McCain established the same boundary line between Lot 289 and Lot 290, despite MP#2's argument to the contrary. Using the monuments, the surveyors determined the boundary between Lots 289 and 290 to have lengths consistent with the Champagne survey and the revised Robert Berlin plat of Flowers Estate, dated July 13, 1964, of approximately 400 feet (there was

---

[11] We note that during the Highway 21 widening project, Mr. Bonneau and Mr. McCain both testified that they believed that they found what were the original monuments for the lots fronting on the highway, but they had to be replaced due to the taking by the State.

11

a 7/100ths of a foot difference after consideration of the sale of frontage by each of the parties to the Parish in 2008).[12]

The only meaningful discrepancy between the Bonneau and McCain surveys and the Champagne and Berlin surveys was the length of the rear boundary of Lot 288. The Champagne and Berlin surveys noted a rear length of 82 feet, whereas the Bonneau and McCain surveys found a rear length of 80.5 feet, based on the monuments found and tying them into the lots on the Highway 21 corridor and surrounding streets. Mr. Bonneau testified that if the 82-feet number was used to measure westward, as suggested by MP#2, then every other boundary for Lot 289 through Lot 302 would have to be moved over by one and a half feet, creating a domino effect that would push the rear boundary of Lot 302 into Zinnia Drive, which "would disagree with all of the monumentation that we found within that corridor there."[13]

Additionally, Bradford Land submitted evidence regarding the sale of Lot 288 on March 4, 2013, with a survey by John G. Cummings, dated February 4, 2013, attached. Mr. Cummings located the boundaries of Lot 288 in the same place as the Bonneau and McCain surveys, including finding that southern property line of Lot 288 is 80.5 feet in length.[14]

Having thoroughly reviewing the record, we find a reasonable basis for the trial court's factual finding regarding the precise location of the boundary line between Lot 289 and Lot 290. Accordingly, we find no manifest error and cannot say that the trial court was clearly wrong in its determination.

---

[12] The Bonneau and McCain surveys, performed after the 2008 sale to the Parish, reflect a boundary length between Lots 289 and 290 of 392.82 and 392.89 feet, respectively. Thus, prior to the acquisition by the Parish of 6.97 feet of that boundary, the boundary length was 400 feet.

[13] The Marques survey, upon which MP#2 relies, utilized the 82-feet length for the rear boundary of Lot 288. Mr. Marques testified that he found points that indicated he could move the property over by a foot and an inch, but he chose not to. He stated that he held to 82 feet because that "is what this plan calls for." Marques testified that he did not measure any lots west of Lot 290 to see if the length of 82 feet fit within other monumentation to the west of the lot and based his conclusions using monuments in the area of Marigold Drive.

[14] Also, Mr. Maillet surveyed Lots, 288, 289, and 290 for the 2012 Highway 21 improvement project. Mr. Maillet's survey, dated July 25, 2012, found the same monumentation as found by Mr. Bonneau and Mr. McCain and confirms the Bonneau and McCain surveys.

Additionally, we note that the judgment of the trial court provides that "the boundary between lots 289 and 290 is judicially fixed as depicted in the surveys done by John Bonneau and Brandon McCain." It is clear that the trial court intended to fix the boundary according to the parties' titles and the Bonneau and McCain surveys "as the conclusive boundary between the lots." For clarity, we remand to the trial court with instructions to amend the judgment for the sole purpose of attaching or incorporating into the judgment the specific surveys referenced in its January 8, 2021 judgment. See **Andermann v. Rouillier**, 18-88 (La.App. 5 Cir. 4/25/19), 271 So.3d 384, 413, writs denied, 19-00971 (La. 9/24/19), 278 So.3d 978, and 19-00981 (La. 9/24/19), 279 So.3d 935.

**Compensation**

In its last two assignment of errors, MP#2 asserts that if we affirm the trial court's placement of the boundary, any award for damages was incorrect. MP#2 acknowledged that an action to fix a boundary does not prescribe. LSA-C.C. art. 788 ("The right to compel the fixing of the boundary between contiguous lands is imprescriptible"). However, it contends that Bradford Land's claim for damages is a delictual action with a one-year prescriptive period pursuant to LSA-C.C. art. 3493.

As previously stated, the trial court specifically found LSA-C.C. art. 670 applicable to the matter before us. The trial court determined that the encroachments were placed on Bradford Land's property in good faith and, pursuant to Article 670, would be allowed to stay. Additionally, the trial court awarded compensation only, finding that no "other damage" was due.

Of note, we do not consider whether the predial servitude set forth in Article 670 would apply to the specific encroachments at issue herein. The parties do not contest the application of Article 670, and this issue was neither assigned as error nor raised in the parties' briefs. Accordingly, we do not address whether the application of Article 670 was appropriate under the facts before us.

Therefore, because the trial court found Article 670 applicable, we consider the remedies provided therein. Pursuant to Article 670, MP#2 will acquire a predial servitude on the land occupied by the encroachments upon payment of compensation

13

for the value of the servitude taken and for any other damage that Bradford Land has suffered. The trial court awarded Bradford Land $33,500.00 as the value of the servitude, but declined to award any other damages.

Although MP#2 asserts that any claim for damages has prescribed, its actual argument regarding the predial servitude is that the valuation is incorrect. Specifically, MP#2 argues that no law supports the right to a buffer zone when granting a predial servitude pursuant to Article 670. According to MP#2, the actual size of the encroachment was 526 square feet for the concrete parking and 32 square feet for the gravel and concrete encroachment, for a total of 558 square feet. Therefore, accepting Mr. Ray's valuation of the property at $14.50 per square foot, MP#2 argues that the value for the actual size of the encroachment should be $8,091.00. Alternatively, using Mr. Bonneau's farthest encroachment point at 3.5 feet, and were one to allow a straight-line boundary, MP#2 argues that the maximum damages would be $19,919.69, not $33,500.00. However, we note that Mr. McCain found the farthest point of encroachment to be 4.6 feet, being the top of one of the two sewer cleanout tanks.

A predial servitude is a charge on a servient estate for the benefit of a dominant estate. LSA-C.C. art. 646. Predial servitudes are either natural, legal, voluntary, or conventional. LSA-C.C. art. 654. The predial servitude contained in LSA-C.C. art. 670 is a legal servitude. Legal servitudes are limitations on ownership established by law for the benefit of the general public or for the benefit of particular persons. LSA-C.C. art. 659.

Article 670 was enacted in 1978 to empower the courts with discretionary authority to grant a predial servitude to landowners who constructed a building in good faith that encroached on an adjacent estate. This authority is premised on the provision that compensation be made to the adjoining landowner burdened by the servitude. **Bushnell v. Artis**, 445 So.2d 152, 154-55 (La.App. 3 Cir. 1984).

In **Bushnell**, the defendant's home encroached on the plaintiff's property for approximately six feet. The trial court awarded the encroaching landowner a predial servitude to allow a straight-line boundary (of servitude) on a line three feet east of the east edge of the defendant's roof from the rear of her lot south to the street.

14

**Bushnell**, 445 So.2d at 155. In affirming the trial court's judgment, the third circuit noted the well-reasoned opinion of the trial court that reflected sound reasoning in fixing the predial servitude, wherein the trial court recognized that the defendant must be allowed enough room to maintain and repair her building. **Id**.

In **Atwood v. Hylan**, 28,971 (La.App. 2 Cir. 12/11/96), 685 So.2d 450, 453, the second circuit amended the trial court's judgment and granted the plaintiff a predial servitude under Article 670 on the land occupied by his encroaching boathouse and pier. The servitude included an area of four feet extending around the perimeter of the entire structure of the plaintiff to allow access for repair and maintenance.

Mr. Ray testified that a six-foot buffer was fairly small, considering the 4.6 feet encroachment as determined by Mr. Bonneau. On our review, we find no error by the trial court in the granting a six-foot straight-line predial servitude under LSA-C.C. art. 670 and in its calculation of the compensation for the value of the servitude.

Alternatively, MP#2 makes the argument that damages were illegally awarded because the consent judgment entered into between it and the City of Covington ruled that MP#2 did not violate any setbacks. The consent judgment set forth the requirements for parking spaces, green spaces, and tree plantings by MP#2 on Lot 289. The judgment then provided that "[t]he City of Covington shall deem the above obligations sufficient to meet all City Planning and Zoning requirements and all parking and landscaping requirements for the present zoning classification."

A consent judgment is a bilateral contract between the parties by which the parties adjust their differences by mutual consent. Its binding force arises from the voluntary acquiescence of the parties rather than the adjudication by the court. **Mayo v. Hutchinson**, 16-1642 (La.App. 1 Cir. 9/27/17), 232 So.3d 567, 573-74. The consent judgment overturned the denial of the variance by the Covington Board of Adjustments with regard to Lot 289, but made no findings, such as the location of the boundary line between Lot 289 and Lot 290. Moreover, MP#2's argument regarding peremption based on the law applicable to building restrictions and the application of zoning requirements is inapplicable as neither issues were before the trial court. MP#2's argument is without merit.

15

**The Answer to the Appeal**

Bradford Land filed an answer to the appeal raising several arguments and seeking modification of the judgment of the trial court. Initially, Bradford Land contends that the trial court erred in failing to grant it judicial interest from the date of demand, although the trial court's Written Reasons for Judgment provided for judicial interest from the date of demand.

The January 8, 2021 judgment is silent regarding legal interest. However, the grant of judicial interest is governed by LSA-C.C.P. art. 1921, which provides that "[t]he court shall award interest in the judgment as prayed for or as provided by law." Since the word "shall" in Article 1921 is mandatory, the court lacks discretion to deny interest if interest is prayed for or provided for by law. **Quality Design and Const., Inc. v. City of Gonzales**, 2013-0752 (La.App. 1 Cir. 3/11/14), 146 So.3d 567, 573.

In its petition, Bradford Land prayed for "judicial interest on all amounts due." Accordingly, we amend the judgment of the trial court ordering the predial servitude to include an award of judicial interest owed by MP#2 on the $33,500.00 amount from the date of demand, September 16, 2011, until paid.

Bradford Land next asserts that it is entitled to fair market rent for the period of time MP#2 improperly encroached upon its property. Bradford Land contends that although the trial court granted a predial servitude to MP#2 and compensated Bradford Land for the value of servitude, the trial court manifestly erred in failing to award Bradford Land any damages for MP#2's past use of Lot 290, in accordance with the provisions of Article 670.[15]

The trial court ordered that Bradford Land be paid $33,500.00 for the value of the predial servitude pursuant to Article 670, but the trial court declined to award any rent. Thus, the trial court implicitly determined that Bradford Land did not suffer "any other damage." On our review of the record, we find no manifest error by the trial court in this determination.

---

[15] As previously noted, Article 670 provides for the "payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered."

16

In its last two assignments of error, Bradford Land avers that it is entitled to have the predial servitude limited to prevent MP#2 from constructing any additional improvements on Lot 290 as Article 670 does not allow same. Bradford Land also contends that it is entitled to a decree that the predial servitude granted to MP#2 extinguishes in accordance with law and, particularly, LSA-C.C. arts. 751 through 774.

As a general rule, an appellate court will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. **Pinnacle Builders, Inc. v. John**, 21-0335 (La.App. 1 Cir. 12/22/21), 340 So.3d 107, 117. Moreover, LSA-C.C. arts. 646 through 774 set forth the law regarding predial servitudes. We decline to add anything further to the judgment.

## CONCLUSION

For the above reasons, the January 8, 2021 judgment of the trial court in favor of Bradford Land Company, LLC is amended to include legal interest from the date of judicial demand and, as amended, is affirmed. We remand to the trial court with instructions to amend the judgment for the sole purpose of attaching or incorporating into the judgment the specific surveys referenced in its January 8, 2021 judgment. All costs of this appeal are assessed to Montagnet Properties #2, LLC.

**JUDGMENT AMENDED, AFFIRMED AS AMENDED, AND REMANDED WITH INTRUCTIONS; ANSWER TO APPEAL GRANTED IN PART, DENIED IN PART.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1393

BRADFORD LAND COMPANY, L.LC.

VERSUS

MONTAGNET PROPERTIES #2, L.L.C.

THERIOT, J., concurring with reasons.

Louisiana Code of Civil Procedure Articles 1919 and 2089 require that all final judgments affecting immovable property must describe such property. Because a predial servitude is an incorporeal immovable, the specificity requirements of Articles 1919 and 2089 apply to the January 8, 2021 judgment's description of the predial servitude running from the entire boundary of Lot 289 and onto Lot 290. See **Clark v. Fazekas**, 2019-1386 (La. App. 1 Cir. 5/11/20), 303 So.3d 1066, 1069. The purpose of these articles is "to insure that the public in general, and title examiners, successful litigants, officials charged with executions of judgments and surveyors in particular, can accurately deal with the immovable property." **Hurst v. Ricard**, 558 So.2d 1269, 1272 (La. App. 1 Cir.), writ denied, 559 So.2d 1378 (La. 1990).

Therefore, I would encourage the trial court to provide an accurate legal description of the predial servitude and the boundary line in accordance with the surveys done by John Bonneau and Brandon McCain.